[Cite as *Alsup v. Univ. of Cincinnati*, 2013-Ohio-4850.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SHIRLEY A. ALSUP

    Plaintiff

    v.

UNIVERSITY OF CINCINNATI

    Defendant

Case No. 2010-04602

Magistrate Anderson M. Renick

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging defamation. After a trial on the issue of liability, the court rendered judgment in favor of plaintiff and the case proceeded to trial on the issue of damages.

{¶ 2} In 2009, plaintiff was employed as the academic administrator and director of defendant's, University of Cincinnati (UC), College of Nursing co-op program. Plaintiff's job duties included managing the program's operations in three hospitals that placed UC nursing students upon graduation. In January 2009, Leigh Ann Pansch, one of plaintiff's associate directors, notified Madeleine Martin, Ed.D., plaintiff's supervisor and Assistant Dean of the college of nursing, that her professional relationship with plaintiff was "becoming hostile." Subsequently, both plaintiff and Pansch filed grievances with UC's human relations department. After meeting with plaintiff and Pansch, Dr. Martin determined that "more formal action" was required to address staff management problems. (Plaintiff's Exhibit 5.) On March 16, 2009, plaintiff was informed by Dr. Martin and Andrea Lindell, Ph.D., Dean of UC's College of Nursing, that she was being terminated from her employment for cause, for the reasons that she failed "to facilitate a positive working environment" and created "a negative impact with

the contracted clinical agencies." (Plaintiff's Exhibit 15.) It is undisputed that plaintiff was an at-will employee at the time of the termination.

{¶ 3} Although plaintiff was "shocked" by the termination, she told Drs. Martin and Lindell that she wished the program well. In response to a petition that had been circulated to show support for plaintiff, Dean Lindell met with a group of students and faculty and informed them that plaintiff had been under investigation for a period of one to two years prior to the decision to terminate her employment.

{¶ 4} Plaintiff testified that, on April 1, 2009, she learned of Dean Lindell's comments at a Rapid Response symposium that was attended by her students and other nurses. The next day, plaintiff received a letter informing her that her employment with University Hospital (UH), a private institution, was being terminated as a result of a "reduction in force." (Plaintiff's Exhibit 27.) Plaintiff testified that she did not recall signing an employment contract with UH and that she believed the decisions to terminate her employment from UC and UH were related. According to plaintiff, the temporal nexus between the Dean's comments and the loss of her employment at UH show that the action was caused by the defamatory comments.

{¶ 5} Plaintiff contends that the defamatory comments caused her humiliation, adversely affected her marriage, and damaged her professional reputation, significantly reducing her earning ability. Defendant maintains that plaintiff is entitled to only nominal damages and that she is not entitled to special damages inasmuch as defendant asserts she failed to prove that she suffered harm to her reputation as a result of the Dean's comments.

{¶ 6} As stated in the liability decision, the Dean's defamatory comments were slanderous per se inasmuch as the statement that plaintiff had been "under investigation for one and a half to two years" tends to injure her in her chosen profession. Accordingly, some damages are presumed, and the plaintiff is not required to prove special damages. *Schoedler v. Motometer Gauge & Equip. Corp.*, 134 Ohio

St. 78, 84 (1938); *Knowles v. Ohio State Univ.* 10th Dist. Nos. 05AP-727, 05AP-739, 2006-Ohio-6732, ¶ 93; *Shoemaker v. Community Action Org. of Scioto Cty., Inc.*, 4th Dist. No. 06CA3121, 2007-Ohio-3708, ¶ 13. As to the type of damages recoverable in a defamation action, a plaintiff may recover "economic losses, which include lost income and loss of earning capacity, where the evidence shows a nexus between the damages and the defamation," and damages "also include impairment of reputation, personal humiliation, shame, mental anguish, and suffering." *Isquick v. Dale Adams Enterprises, Inc.*, 9th Dist. No. 20839, 2002-Ohio-3988. Plaintiff "is not required to provide the [trier of fact] with a precise arithmetic formula by which to compute the damage award." *Am. Chem. Society v. Leadscope, Inc.*, 10th Dist. No. 08AP-1026, 2010-Ohio-2725, ¶ 64, citing *Id.*

{¶ 7} Plaintiff testified that she was humiliated and became severely depressed after learning that Dean Lindell told her colleagues and students that she had been under investigation for an extensive period of time. According to plaintiff, her emotional distress was so severe that she had thoughts of suicide, which she discussed with her daughter and a counselor at church. Plaintiff testified that she could not afford to seek professional treatment inasmuch as her medical insurance coverage ended when her employment was terminated and she was the sole income earner in the household. Plaintiff related that her husband did not provide her any emotional support and that he questioned her regarding the reason she lost her employment. Plaintiff testified that her marriage ended approximately six months after the termination of her employment.

{¶ 8} With regard to wages or other compensation that plaintiff contends she lost as a result of the defamation, plaintiff presented calculations based upon her income history as shown in payroll and tax documents which are summarized in Plaintiff's Exhibit 45. Plaintiff seeks compensation equal to the amount of wages she earned from UC and UH for the period of time following her employment with those hospitals until she began work with Atrium Medical Center, less severance pay, unemployment compensation, and part time wages earned during that time. Plaintiff's wage

calculations include the assumption that she would have received an annual five percent increase in wages during the ten years after the incident. Plaintiff also presented the testimony of Mary Hill, M.D., who had worked with plaintiff for approximately 12 years when they were members of a Rapid Response committee. According to Dr. Hill, plaintiff's reputation in the medical community prior to the incident was "flawless." Dr. Hill testified that she was shocked when plaintiff informed her that she had lost her job and she was surprised when she learned that plaintiff was having difficulty finding another job. Dr. Hill related that plaintiff is "well thought of" among committee members and that the Dean's comments did not lower her personal assessment of plaintiff's reputation. However, Dr. Hill stated that the defamatory comments must have had some impact on plaintiff's professional reputation based upon the difficulty plaintiff experienced finding similar employment.

{¶ 9} Although plaintiff contends that there is no reason other than the Dean's comments to explain why she lost her job at UH, plaintiff acknowledged that she has no documents or other evidence to support that contention, except for the temporal proximity between the defamatory statement and the UH termination. Plaintiff testified that the only explanation she received was that her part-time position with UH was terminated as a result of a "reduction in force." Plaintiff further testified that it was her "gut feeling" that the loss of her UH job was related to the termination of her employment with UC. However, even if the decision to terminate plaintiff's UH employment was related to the loss of her UC job, neither the UC termination, nor any harm to plaintiff's professional reputation as a result of losing her UC employment, give rise to an action for damages inasmuch as her position with UC was terminable-at-will. In short, the court finds that plaintiff has failed to prove that the defamatory statements were the reason for her discharge from UH. For the reasons stated above, the court finds that both the loss of her employment with UH and any difficulty she experienced finding comparable employment were not solely related to the defamatory statements.

Consequently, plaintiff's work loss calculations are not an accurate representation of the economic damages attributable to the defamatory comments.

{¶ 10} Although the court finds that the defamatory statement caused some injury to plaintiff, the evidence does not suggest that Dean Lindell's comments were the sole cause of plaintiff's injuries. Regarding the emotional distress she experienced as a result of the defamatory comments, plaintiff testified that her mental anguish and embarrassment affected "every part of her life." However, plaintiff acknowledged that, on March 16, 2009, she was shocked, humiliated, and devastated when she learned her UC position had been terminated for being an ineffective leader. Although plaintiff testified that she realized that "trust was gone" in her marriage when her former husband questioned her regarding the reason her employment was terminated, plaintiff conceded that financial concerns had previously been a source of stress and difficulty in her marriage inasmuch as her husband was unemployed and did not provide financial support for the family. The court is not persuaded that the defamatory comments were the only source of distrust and stress in plaintiff's marriage, or that the Dean's statements "destroyed" her marital relationship.

{¶ 11} Based upon the totality of the evidence, the court concludes that plaintiff is entitled to damages attributable to Dean Lindell's defamatory comments in the amount of $35,000, which includes, but is not limited to, loss of earning capacity and mental anguish. Accordingly, judgment is recommended in favor of plaintiff in the amount of $35,025, which includes the filing fee paid by plaintiff.

{¶ 12} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

*and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Allan Showalter
Assistant Attorney General
Executive Agencies Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

Dale A. Stalf
Kevin K. Frank
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

004
Filed June 3, 2013
To S.C. Reporter October 31, 2013